**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **Triston D. Fowler,** | ) | **Civil Action No.:_____** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **Trans Union, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## <u>COMPLAINT</u>

1.     This is an action brought by Plaintiff, Triston D. Fowler, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2.     The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.     The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4.     Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5.    To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e(b) and 1681i, which are two of the cornerstone provisions of the FCRA.

6.    One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

### JURISDICTION AND VENUE

7.    This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331.

8.    Venue is proper in the Charleston Division because the Plaintiff resides in Dorchester County, and the Defendant transacted business in this division.

### PARTIES

9.    Plaintiff, Triston D. Fowler, is a resident and citizen of the State of South Carolina, Dorchester County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10.    Defendant Trans Union, LLC, ("Trans Union") is a limited liability company

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492.  At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11.     Defendant Trans Union is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a.  Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12.     Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13.     Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

14.     The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's Trans Union credit file, and failed to reinvestigate Plaintiff's disputes.  Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

15. In September 2024, Plaintiff first became aware that he was the victim of identity theft when Bank of America alerted him that his social security number was being used to enroll in a military benefits program.

16. Upon reviewing his credit reports, Plaintiff discovered that someone in Rancho Cucamonga, California had been using his social security number since 2019 to obtain credit and purchase vehicles.

17. In September 2024, Plaintiff attempted to file an online dispute with Defendant but was unable to complete his dispute due to issues with the online dispute filing process. As a result, Plaintiff called Defendant and specifically disputed eight accounts being reported by Navy Federal Credit Union (hereinafter "NFCU") and one collection account being reported by Credit Collection Services, as the accounts did not belong to him.

18. During Plaintiff's call with Defendant in September 2024, he also added a security freeze to his Trans Union credit report.

19. On September 17, 2024, Plaintiff purchased monthly credit monitoring services from Defendant, for $32.05 per month. Plaintiff understood that Defendant's credit monitoring services would alert him of any changes to his credit report and would provide him 3-Bureau credit monitoring.

20. On September 19, 2024, Plaintiff filed a police report with the Spartanburg Police Department because he was living in Spartanburg at the time. That same day, Plaintiff also filed an identity theft report with the Federal Trade Commission.

21. On August 1, 2025, Defendant allowed an unauthorized hard inquiry of Plaintiff's

credit report despite the Security Freeze.

22. On August 22, 2025, as a result of the unauthorized hard inquiry, Plaintiff's Trans Union credit score decreased.

23. On October 23, 2025, NFCU reported one of the fraudulent accounts as being over credit limit and 30 days past due. As a result, on October 23, 2025, Plaintiff's Trans Union credit score dropped even further.

24. On January 23, 2026, Plaintiff's Trans Union credit score dropped again.

25. On February 12, 2026, Plaintiff filed an online dispute with Defendant to again dispute multiple inaccurate items appearing on his Trans Union credit file. Specifically, Plaintiff disputed multiple inquiries which he did not authorize. Plaintiff also disputed the two open fraudulent NFCU accounts, multiple fraudulent addresses, and a name and SSN appearing on his credit report. Plaintiff provided Defendant with a copy of the police report he filed, his FTC Identity Theft Affidavit, driver's license, and Social Security card.

26. On or about February 12, 2026, Plaintiff received an email from Defendant confirming receipt of his dispute and stating an investigation had been launched.

27. On that same day, Plaintiff received an email from Defendant stating their investigation was complete and that its dispute results were ready for Plaintiff's review. However, when Plaintiff viewed the dispute results, the only item listed stated that the Employment Information on Plaintiff's credit file had been updated to report no employer information. Defendant's dispute results did not indicate any of the items Plaintiff disputed were actually investigated as none were listed on the dispute results.

28. On or about February 15, 2026, Defendant sent Plaintiff a letter informing Plaintiff

5

that it denied his request to block the two fraudulent NFCU accounts.

29. On February 19, 2026, Defendant notified Plaintiff it had placed a security freeze on Plaintiff's Trans Union credit report. This was surprising to Plaintiff because he never requested that Defendant lift his original security freeze which he put on in September of 2024.

30. On February 28, 2026, Plaintiff filed a new online dispute with Defendant. Defendant never responded to Plaintiff's dispute.

31. On or about March 4, 2026, Plaintiff filed another online dispute with Defendant, again disputing multiple fraudulent accounts and inaccurate information appearing on his Trans Union credit report.

32. That same day, Plaintiff received an email from Defendant stating its investigation was complete and the disputes results were ready for Plaintiff's review. Defendant's dispute results showed that one of the disputed, fraudulent NFCU accounts had been verified as accurate and thus remained on Plaintiff's credit report. The fraudulent Credit Collection Service account and the second fraudulent NFCU account had finally been deleted.

33. Despite two of the fraudulent accounts being deleted, on March 6, 2026, Plaintiff's Trans Union credit score again decreased.

34. Although fraudulent NFCU accounts continued to be reported on Plaintiff's Trans Union credit report, on March 20, 2026, Plaintiff had no choice but to begin applying for a mortgage as he was moving and need to purchase a new home.

35. Unfortunately, on March 22, 2026, just two days later and before Plaintiff could be

approved for a mortgage, the NFCU account began reporting as a delinquent account on Plaintiff's credit report.

36.     On or about March 26, 2026, Plaintiff obtained a new copy of his Trans Union credit report which confirmed Defendant was continuing to report a fraudulent address, seven fraudulent NFCU accounts, and fraudulent inquiries for NFCU.  Additionally, Plaintiff's credit report showed Defendant was reporting hard inquiries by CapOne Auto, Ocean Honda, AmericanCred and Carmax, all of which were unauthorized and fraudulent. Plaintiff's credit score on March 26, 2023, was 630, which was considered "Fair."

37.     Plaintiff immediately disputed each of the inaccurate items and accounts appearing on his Trans Union credit report.

38.     On or about April 17, 2026, Plaintiff received an email from Defendant stating their investigation was complete and the dispute results were ready for Plaintiff's review.

39.     On or about April 17, 2026, Plaintiff also received an email from his mortgage loan officer with REV Federal Credit Union requesting clarification of the delinquent NFCU account, and indicating the underwriter would need to conduct a further review, causing a delay in Plaintiff's homebuying process.

40.     On June 11, 2026, Plaintiff sent a written dispute letter to Defendant wherein he specifically informed Defendant that another individual by the name of Triston D. Fowler had been wrongfully using Plaintiff's social security number since 2019.  Plaintiff informed Defendant that he did not live at the military address on his credit report and that he had never been in the military.  Accordingly, Plaintiff requested the incorrect military address be deleted from his credit report. Plaintiff also disputed any addresses in California

7

appearing on his credit report because he had never lived in California. Next, Plaintiff disputed all seven NFCU accounts as "not his." Plaintiff specifically informed Defendant that he had never borrowed money from NFCU and that the accounts were not his accounts. Finally, Plaintiff disputed dozens of soft inquiries as they were done by entities with whom he had never done business and were related to the other individual named Triston D. Fowler. With his dispute letter, Plaintiff included a copy of his police report, FTC Affidavit, and a letter from Social Security confirming that it had mistakenly given Plaintiff's social security number to a third party.

41.    Defendant received Plaintiff's written dispute on June 16, 2026.

42.    On or about June 19, 2026, Defendant forwarded a letter stating it had received Plaintiff's fraud block request, but was unable to block the information on Plaintiff's credit report because Plaintiff's request was allegedly missing personal identifying information, account specific information was not included, and/or the description of the identity theft was too vague and/or did not include specific information related to the identity theft. None of those reasons were correct as Plaintiff had not only provided a copy of his driver's license, FTC Identity Theft Affidavit, a copy of his statement to the police, and a letter from Social Security, his letter also specifically identified all of the accounts.

43.    On that same day, June 19, 2026, Defendant forwarded Plaintiff the results of its alleged investigation into Plaintiff's disputes, wherein Defendant informed Plaintiff that three inquiries were deleted from his credit report. However, the investigation results did not provide any information regarding the numerous other items disputed including the seven fraudulent NFCU accounts and addresses.

44.     With its Investigation Results, Defendant also provided Plaintiff with an updated credit report.  Upon review of his credit report, Plaintiff discovered that the NFCU accounts were no longer reporting on his credit report and the inaccurate address had also been removed.  However, his credit report continued to report the disputed soft inquires for Capital One, Quinstreet, and Credit Karma, as well as hard inquiries by CBC Ocean Honda of San Juan, American Credit Acceptance, and Carmax which were all unauthorized inquiries made by the identity thief.

45.     Defendant repeatedly failed to make a reasonable reinvestigation into Plaintiff's disputes.

46.     To date, Defendant continues to report inaccurate information and allow unauthorized third parties access to Plaintiff's credit report.

47.     Upon receipt of the ACDV responses from the furnishers of the fraudulent account information, Defendant simply accepted the furnishers' verifications of the Accounts and did not undertake to perform any investigation of its own.

48.     Despite Plaintiff's security freeze, Defendant repeatedly allowed unauthorized parties to lift the freeze and/or to access Plaintiff's credit report.

49.     Defendant repeatedly refused to block fraudulent accounts and information from Plaintiff's credit reports.

50.     For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information.  The CRA must make some independent investigation of its own.  "Merely reporting whatever information the creditor furnished was not reasonable, especially where

9

the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

51.    If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

52.    Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

53.    The Plaintiff adopts the averments and allegations of paragraphs 15 through 52 hereinbefore as if fully set forth herein.

54.    Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to:  (a) failing to follow reasonable

10

procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

55.    Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

56.    As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, a delay in purchasing a home which caused damages as home prices and interest rates have continued to rise, worry, inability to focus, loss of sleep, time spent repeatedly reaching out to Defendant to dispute the inaccurate information continuing to report on his credit reports, invasion of privacy by allowing unauthorized individuals and entitles access to Plaintiff's credit reports, headaches, irritability, loss of enjoyment of life, physical pain and sickness, frustration, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded him from seeking further credit opportunities and also caused him to not receive promotional offers of credit.

57.    Plaintiff is entitled to actual damages in an amount to be determined by the jury.

58.    In addition, the Plaintiff has incurred litigation expenses and attorney's fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

59.    Plaintiff is entitled to his attorney's fees, pursuant to 15 U.S.C. §1681o(a)(2).

11

## COUNT TWO
(Fair Credit Reporting Act)

60.     The Plaintiff adopts the averments and allegations of paragraphs 15 through 59 hereinbefore as if fully set forth herein.

61.     Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to:  (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

62.     Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

63.     Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

64.     As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, a delay in purchasing a home which caused damages as home prices and interest rates have continued to rise, worry, inability to focus, loss of sleep, time spent repeatedly reaching out to Defendant to dispute the inaccurate information continuing to report on his credit reports, invasion of privacy by allowing unauthorized individuals and entitles access to Plaintiff's credit reports, headaches, irritability, loss of enjoyment of life, physical pain and sickness, frustration, embarrassment

and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded him from seeking further credit opportunities and also caused him to not receive promotional offers of credit.

65.     Plaintiff is entitled to actual damages in an amount to be determined by the jury.

66.     In addition, the Plaintiff has incurred litigation expenses, and attorney's' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

67.     Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights.  Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

68.     Plaintiff is entitled to his attorney's fees, pursuant to 15 U.S.C. §1681n(a).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.     Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.     Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.     Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.     For such other and further relief as the Court may deem just and proper

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed.  ID No.  10323
*Attorney for Plaintiff*

13

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Trans Union, LLC
c/o The Prentice-Hall Corporation System, Inc.- Registered Agent
100 Coastal Drive, Suite 210
Charleston, SC 29492